IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 10, 2009

## STATE OF TENNESSEE v. JOHNNY TATE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-08398     Lee V. Coffee, Judge**

_____

**No. W2008-02503-CCA-R3-CD  - Filed May 7, 2010**
_____

The defendant, Johnny Tate, was convicted by a Shelby County jury of two counts of especially aggravated kidnapping, Class A felonies; two counts of aggravated robbery, Class B felonies; and aggravated burglary, a Class C felony. He was subsequently sentenced to two sentences of life without parole, to two sentences of twelve years, and to a sentence of six years for the respective convictions. Further, the trial court ordered that the two sentences of life be served consecutively to each other, with the other sentences to be served concurrently. On appeal, the defendant raises the single issue of sufficiency of the evidence. Specifically, he contends that the evidence presented is insufficient to establish his identity as the perpetrator of the crimes. Following review of the record, we affirm the judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J.C. MCLIN, JJ., joined.

Ruchee J. Patel, Memphis, Tennessee, for the appellant, Johnny Tate.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Pritchard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background

At approximately 7:45 p.m., the seventy-five-year-old victim, Larry Hassell, was in his front yard watering the lawn. He observed the defendant and a "well-dressed" black

woman approach him. At first, Mr. Hassell was not alarmed, but he then observed that the defendant had a gun with a short barrel, resembling a .38, in his hand. The defendant proceeded to shove Mr. Hassell onto the concrete and told him to "get you M.F. into that carport," while holding the gun to his head. The defendant then demanded $5000, saying that he was a "dope head." The defendant then pulled Mr. Hassell up and shoved him back down to the ground "a couple of times." The defendant then asked who else was in the home, and Mr. Hassell informed him that his wife was upstairs. The defendant, followed by his accomplice who was later identified as Brenda Robinson, forced Mr. Hassell into the home at gunpoint.

The group went into an upstairs television room, where Mrs. Hassell was sitting. The defendant, upon entering, pointed the gun at her. He then demanded Mr. Hassell's wallet and pointed the gun at his head. While the defendant left the room to retrieve the wallet, Robinson kept the gun pointed at Mr. Hassell's head. Upon the defendant's return, he demanded Mr. Hassell's ATM number and removed two credit cards. When Mr. Hassell explained that he did not have an ATM number, the defendant prodded him with the gun and said, "Give me that number you M.F. or I'm going to blow your brains out."

The defendant found electrical tape, telephone cords, and ropes throughout the house, and he then forced the Hassells to lie on their stomachs on the floor and proceeded to "hog tie" them. The defendant then held the gun to Mr. Hassell's head again and demanded to know where the safe was located. The defendant and Robinson then took turns ransacking the home, with the other remaining in the room with the gun pointed at the Hassells. The defendant repeatedly informed the Hassells that he would "blow their brains out" if they looked up. Both Mr. and Mrs. Hassell were in pain and were having a difficult time breathing.

At approximately 9:30 p.m., the Hassells heard the door to their residence slam. Mrs. Hassell was then able to free herself from her bindings and then free her husband. Mr. Hassell grabbed his gun to pursue the defendant and Robinson, but they had already fled the scene in the Hassell's two Cadillac sports utility vehicles. Mr. Hassell then went to his neighbor's home and contacted the police and OnStar. The police arrived approximately five minutes later, and thirty minutes later the Hassells were informed that their cars had both been found at a residence in West Memphis. The Hassells also discovered that the defendant and Robinson had taken sets of dishes, a 1891 encased Whitney gun, china, silverware, televisions, a microwave, clothes, suitcases, steak knives, flashlight batteries, a 1921 silver dollar, and many other items. The estimated value of the items stolen was $100,000. Mr. Hassell provided police with a general description of the assailants, but he was later unable to provide a positive identification in a photo line-up.

The two vehicles were tracked by OnStar to 805 Walnut Street, the residence of the defendant's mother. Upon arriving, investigators discovered that the stolen items were still located in the cars or scattered in the front yard. Additionally, inside one of the vehicles was a black purse which contained identification for Mr. Hassell and Robinson. The defendant's mother consented to a search of the residence, but no items were found inside. Investigators ran a background check on Robinson and discovered that the defendant was her main associate.

In the days following the robbery, Jonesboro, Arkansas police officers arrested the defendant and Robinson on separate charges. The pair was arrested in front of a local Kroger. When arrested, the authorities discovered a 1921 silver dollar, later identified as belonging to the Hassells, in the defendant's pocket. Additionally, the weapon used in the robbery of the Hassells was found lying on the ground between the defendant and the vehicle from which he was taken during the arrest. Authorities discovered that the defendant and Robinson had been staying at a local motel and obtained a search warrant. In the room, police found a pawn ticket for four sets of gold earrings, later identified as belonging to Mrs. Hassell. Police also learned that the defendant's brother was renting the room beside the one rented by the defendant and Robinson. During their search, police noticed a Sears truck pull into the parking, stop and look, and then exit. Police stopped the truck and found that the defendant's brother was driving. After being questioned, he was released.

Memphis police subsequently learned of the arrests of the defendant and Robinson and proceeded to question them. After being read his rights, the defendant gave a detailed statement to police admitting his involvement but stating that he had forced Robinson to participate. He indicated that he saw Mr. Hassell on the front lawn, approached him with a weapon, and proceeded to force him into the home where he and Robinson stolen numerous items, loaded them into the Hassell's vehicles, and then drove to a house belonging to the defendant's mother. He further indicated that shortly after their arrival, he heard police approaching and left the area on foot, leaving behind the vehicles and the stolen items.

Based upon the foregoing, the defendant was indicted by a Shelby County grand jury for two counts of especially aggravated kidnapping, two counts of aggravated robbery, and one count of aggravated burglary. Following a jury trial, he was convicted as charged. After a subsequent sentencing hearing, the defendant received two life sentences, two twelve-year sentences, and one six-year sentence for the respective convictions. The court further ordered that the two life sentences be served consecutively to each other but that the remaining sentences be served concurrently. Following the denial of his motion for new trial, the defendant timely appealed to this court.

**Analysis**

-3-

On appeal, the defendant raises the single issue of sufficiency of the evidence. Specifically, he contends that the evidence presented was not sufficient "to exclude all other reasonable theories except that of [the defendant's] guilt." He relies on the following: Mr. Hassell was unable to provide a positive identification; there was no evidence that the defendant resided at 805 Walnut Street; his statement to police contained inaccuracies and was not corroborated; and he had no knowledge of where the only direct piece of evidence, the 1921 silver dollar, came from. He further asserts that all the other evidence tended to support the guilt of his brother, such as that his brother used his mother's address, his brother's identification was used on the pawn ticket found, and he and his brother physically resembled each other.

In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), the facts in such cases must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the [d]efendant and the [d]efendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence, "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with

innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

As noted, the defendant was convicted of especially aggravated kidnapping, aggravated robbery, and aggravated burglary. Especially aggravated kidnapping, as relevant here, is false imprisonment, as defined in Tennessee Code Annotated section 39-13-302: (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.] . . . T.C.A. § 39-13-305(a)(1) (2006). A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty. T.C.A. § 39-13-302(a) (2006). Additionally, aggravated robbery, as charged in this case, is robbery as defined in Tennessee Code Annotated section 39-13-401: (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.] . . . T.C.A. § 39-13-402(1) (2006). Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear. T.C.A. § 39-13-401(a) (2006). Finally, aggravated burglary is burglary of a habitation as defined in sections 39-14-401 and 39-14-402. T.C.A. § 39-14-403(a) (2006). As relevant here, a person commits burglary who, without the effective consent of the property owner: (1) Enters a building and commits or attempts to commit a felony, theft or assault[.] . . . T.C.A. § 39-14-402(a)(3). Under Tennessee Code Annotated section 39-14-401, habitation, as utilized in this case: (A) [m]eans any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of person[.] . . . T.C.A. § 39-14-401(A) (2006). As we read the defendant's argument, he does not contest whether the elements of each offense were established by the proof. Rather, he asserts only that the proof failed to establish that he was the perpetrator who committed the offenses. We agree with the defendant that the proof more than sufficiently established all the elements of the requisite crimes.

We agree with the defendant that the identity of the perpetrator is an essential element of any crime. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). However, like any other requisite element, sufficient proof of the perpetrator's identity may be established through circumstantial evidence alone. *Reid*, 91 S.W.3d at 277. As with any other circumstantial evidence, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the [d]efendant and the [d]efendant alone." *Id*. Again, it is the jury that decides the appropriate weight to be given circumstantial evidence and any inferences that may be drawn therefrom. *Marable*, 313 S.W.2d at 457.

Each of the assertions made by the defendant was put before the jury and argued as part of his defense at trial. Based upon their verdict, the jury weighed that evidence and found that it was not credible. On appeal, the defendant is essentially asking us to reweigh

the jury's determination, which this court will not do. Rather, we look to the evidence presented and determine if a rational trier of fact could have reached the conclusion that the defendant was guilty of the crimes as charged. In this case, the evidence presented was more than adequate to give the jury sufficient reason to conclude that the defendant did, in fact, commit these crimes. First and foremost, the defendant admitted to police that he was the perpetrator and gave details which would be known only to the one who had committed the crime. We further disagree with the defendant that the statement, though containing some inaccuracies, was not corroborated. Further, the vehicles containing several of the stolen items were found parked in front of the defendant's mother's home. Additionally, Brenda Robinson's identification was found inside one of the vehicles, and Robinson was a known close associate of the defendant. Moreover, when the defendant was arrested in Arkansas, he was in possession of the 1921 silver dollar stolen from the Hassells, as well as the gun used in the commission of the offenses. Finally, a pawn ticket for four pairs of Mrs. Hassell's earrings was found in the defendant and Robinson's motel room. Based upon these facts, a rational trier of fact could reasonably conclude that the defendant committed the crimes.

## CONCLUSION

Based upon the foregoing, the judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE